LATHROP and another, executors, &c., *respondents*, vs. THE AMERICAN BOARD OF FOREIGN MISSIONS and others, *appellants*.

Although a monomaniac may make a valid will, if the delusion which affects the general soundness of his mind has no relation to the subject or object of the will, or the persons who would otherwise be likely, ordinarily, to be the recipients of his bounty; or where the provisions of the will are entirely unconnected with, and uninfluenced by, the particular delusions; yet where the will is the result of that particular delusion which has seized his mind, and controls its operations, the rule is otherwise.

On an application to the surrogate, for probate of a will executed by B. in 1867, the evidence showed that in 1838 the testator was insane, and was, for some time, confined in the insane asylum. After his discharge, and in 1844, he had an acute attack of insanity. From that time down to the time of his death, in 1870, the proofs showed, in his acts and declarations, nu-

Lathrop *v.* American Board of Foreign Missions.

merous facts clearly indicative of an unsound and diseased mind. He was a chronic and confirmed monomaniac in respect to the freemasons, and expressed fears of the loss of his property and life from them. Connected with this delusion was also a delusion that there was a conspiracy among his friends and acquaintances, to rob him of his property. He said he could not have anything to do with his folks; that they were all masons, or under the influence of masons; that he did not want any of his relations to have any of his property, because they were masons. *Held* that it was quite apparent that the will was prepared, dictated and executed under the influence of these delusions ; and that in this view, it was an insane will, and the testator was actually *non compos mentis,* when it was made and executed, and incapable of making any will.

*Held,* also, that a decree of the surrogate, finding, adjudging and declaring that the testator was not of sound mind and memory, at the time of executing said will, and refusing to admit the same to probate, was right, and warranted by the evidence.

APPEAL from a decree of the surrogate of Wyoming county, refusing probate to the will of John Barden, deceased.

*G. F. Danforth,* for the appellants.

*H. C. Comstock,* for the respondents.

*By the Court,* E. DARWIN SMITH, P.J. It appears by the decree of the surrogate, from which this appeal was brought, that the instrument purporting to be the will of John Barden, deceased, was denied probate on the ground that said Barden was not of sound mind and memory, at the time of executing said instrument. No opinion of the surrogate appears among the appellants' papers, but such decision, we presume, was made as a question of fact upon the mass of evidence taken by him and returned upon this appeal. Upon a careful examination and consideration of such evidence, we are satisfied that such decision and conclusion of the surrogate was correct, and warranted by the evidence.

The will upon its face, considered in the light of the extrinsic evidence, was an unnatural one. It ignores

entirely all the instincts and ties of nature, in respect to kith and kindred. It appears that the testator, at the time of making the will, had living two brothers and two sisters, and quite a number of nephews, nieces and collateral relations, none of whom are mentioned in his will.

The evidence shows that Barden was insane, in the year 1838, and for some time was confined in the insane asylum in the city of New York.

Soon after he was discharged from the asylum, he removed to the state of Michigan, where he remained nearly twenty years, and then returned to this state, in 1866, and remained here until his death, in 1870. A physician who was called to see him in Niles, Michigan, in the spring of 1844, testified that he found him laboring under quite an acute attack of insanity.

From that time, during his stay in Michigan and after his return to this state, and down to the time of his death in 1870, the proofs show, in his acts, declarations and conduct, numerous facts clearly indicative of an unsound and disordered mind.

During all this period, I should think, he was a chronic and confirmed monomaniac in respect to the freemasons, and fears in respect to the loss of his property and life from the freemasons. And connected with a delusion on this subject was, also, a delusion that there was a conspiracy among his friends and acquaintances to rob him of his property. Dr. Richardson testified that when he attended him in 1844 he seemed to be laboring under the idea that some one was conspiring to rob him of his property.

A monomaniac may undoubtedly make a valid will if the delusion which affects the general soundness of his mind has no relation to the subject or object of the will, or the persons who would otherwise be likely, ordinarily, to be the recipients of his bounty; or where, as Judge Gridley states the rule in *Stanton* v. *Wetherwax,*

(16 *Barb.*, 263,) " the provisions of the will are entirely unconnected with, and of course uninfluenced by, the particular delusions." But where there is good reason to believe that the will is the result of that particular delusion which has seized his mind, and controls its operations, the rule is otherwise. (*Ibid.*)

The delusion of Barden related particularly to his property, and to his personal relations. After his return to this state, and when asked by an old friend with whom he was conversing about what he should do, " why he did not go to New York to his sister and make himself and her happy, too," he replied : " I can't have anything to do with my folks. They are all masons, or under the influence of masons, and I don't want anything to do with masons."

To the same friend, in 1866, (the will was made in March, 1867,) who again suggested to him to go to New York and make his home there with his sister, he replied, " No ; the men are masons, and the women are under their influence." In October or November, 1866, Barden said to a person with whom he was then boarding, that he was in fear all the time, that the masons were going to murder him ; he said that they had robbed him once, and that he was afraid they were going to murder him. This he repeated a number of times, and said he never should give Andrew or William (his brothers) any of his property, because they were d—d masons, and they had as lieve they (the masons) would murder him for his property, as not.

He said to another witness, in December of the same year, that he did not want any of his relations to have any of his property, because they were masons.

Such conversations occurred often, with a number of other witnesses. The delusion in respect to the masons and their purpose to kill him to get his property, or to rob him of his property, grew more and more marked,

confirmed and embittered, and he constantly connected his relations, particularly his brothers and their sons, with the masons, and declared that the women were under their influence, down to the time of his death.

It is quite apparent, I think, that his will was prepared, dictated and executed under the influence of these delusions, and that in this view it was an insane will, and that he was actually *non compos mentis* when it was made and executed, and incapable of making any will. He was not of sound mind and memory at the time of executing said will, as found, adjudged and declared in the decree of the surrogate.

It is such a case as is described by Judge DENIO, in the *Seamen's Friend Society* v. *Hopper*, (33 *N. Y.*, 624,) as follows : "If a person persistently believes supposed facts which have no real existence except in his perverted imagination, and against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence, he is, so far as they are concerned, under a morbid delusion; and delusion in that sense is insanity. Such a person is essentially mad, or insane, on those subjects, though on other subjects he may reason, act and speak like a sensible man."

In the same case, page 640, Judge BROWN says, that "when the delusion of a man, under such circumstances, relates to the persons who would in the natural course of things become the objects of the testator's care, solicitude and bounty, and especially upon whom the law would cast the inheritance of his property, the instrument must be regarded as invalid to pass the estate, because it does not express the will of a testator of sound and disposing mind."

The same view is taken upon the subject of a delusion of testator, by Chief Justice COCKBURN in a very able opinion discussing the whole subject of insanity, in *Banks* v. *Goodfellow*, (22 *L. T. R.*, 813 ; 39 *L. J. R.*, 237.)

In accordance with these views, we think the judgment and decree of the surrogate should be affirmed.

Decree affirmed.

[FOURTH DEPARTMENT, GENERAL TERM at Buffalo, June, 1876. *E. D. Smith, Gilbert* and *Merwin,* Justices.]